# VOLUNTARY SEPARATION, RELEASE AND NON-COMPETE AGREEMENT

This Voluntary Separation, Release and Non-Compete Agreement ("Agreement") dated this 18th day of June, 2010, is entered into by and between Lesaffre Yeast Corporation (Fermentis Business Unit), Red Star Yeast Company, LLC and any other Lesaffre related or affiliated entities (collectively referred to herein as the "Company"), and Piotr Krasucki ("Employee"), and sets forth all the rights, duties and obligations of the parties with respect to the subject matter hereof. In consideration of the mutual promises set forth in this Agreement, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties agree as follows:

1. <u>Termination from Employment</u>. Employee acknowledges that his employment with the Company ended effective June 18, 2010, although he will be paid his normal salary and benefits through June 30, 2010.

2. <u>Consideration</u>. In exchange for Employee's agreement to comply and his actual compliance with the covenants contained in paragraphs 3, 4, 5 and 6 of this Agreement, the Company agrees to pay Employee, upon execution of this Agreement and expiration of the rescission period hereunder: (i) the gross amount of $ 6597.45 dollars (which amount is equivalent to four (4) weeks of severance pay pursuant to Company policy), payable in a lump-sum, less customary withholdings and deductions (ii) the gross amount of $ 42,883.41 dollars (which amount is equivalent to six (6) months pay at Employee's last base salary), payable in semi-monthly installments on the Company's regularly scheduled pay days, less customary withholdings and deductions, commencing effective July 1, 2010, and (iii) the Company portion of each of Employee's initial six (6) months of COBRA premiums, commencing July 1, 2010. Further, the Company agrees that it will not oppose Employee's application for unemployment compensation. Employee acknowledges that he is not otherwise entitled to any of the consideration described in this Paragraph 2. Except as specifically provided in this Agreement, Employee acknowledges that he is not entitled to any pay or benefits, including but not limited to wages, vacation pay, bonus pay, 401(k), worker's compensation or other compensation from the Company.

3. <u>Full and General Release by Employee</u>. Employee, on behalf of himself and his agents, assigns, executors, heirs and representatives hereby releases, remises, forever discharges, acquits and covenants not to sue the Company, its agents, consultants, directors, employees, officers, owners, predecessors, representatives, successors, shareholders or subsidiaries (the "Released Parties") of, from and for any and all manner of actions, causes of action, suits, charges, debts, injuries, sums of money, controversies, agreements, damages, judgments, executions, charges, claims and demands whatsoever, which existed at any time prior to the execution of this Agreement, whether known or unknown, in law, in equity or otherwise, arising out of his employment with the Company or the termination of his employment with the Company, whether based on state law, federal law or otherwise, including, without limiting the generality of this General Release, claims or causes of action arising under the Age Discrimination in Employment Act of 1967 (ADEA), as amended; Title VII of the Civil Rights Act of 1964, as amended; the Americans with Disabilities Act, as amended; the Family Medical Leave Act; the Wisconsin Fair Employment Act; and/or any other federal, state or local statute,

**EXHIBIT 1**

law, ordinance, regulation or order. Further, Employee releases and forever discharges the Company from any and all other demands, claims, causes of action, obligations, agreements, promises, representations, damages, suits and liabilities whatsoever, both known and unknown, in law or in equity up to the date that this Agreement is executed.

4. <u>Confidentiality</u>.  Employee expressly agrees and promises that he will not disclose, discuss or release, directly or indirectly, in any fashion any information relating to this Agreement with or to any person or entity other than Employee's spouse, attorney or tax or financial advisor as necessary for legal or tax advice purposes, except as may be required by law or subpoena. Employee further agrees to instruct all such individuals whom Employee informs of the nature, terms and/or conditions of this Agreement of the confidential nature of this Agreement and to obtain a pledge from those individuals to maintain confidentiality.

5. <u>Nondisclosure and Noncompete</u>.

   a. Employee agrees that his employment with the Company provided him with peculiarly specialized and sensitive knowledge of confidential information regarding the development of unique yeast, yeast derived and other micro-organism products, applications and production technologies for ethanol production facilities and/or other related processes and/or technologies in which the Company has made a significant investment. "Confidential information" includes various nonpublic materials, policies, procedures, technical, operational, commercial and scientific data, administrative reports, know-how and other information concerning Red Star Yeast Company's yeast production facilities in Cedar Rapids, Iowa and Dothan, Alabama (the "Red Star Plants"), together with Lesaffre affiliated production facilities in Mexico and the manufacturing processes, technologies and business, operational and other commercial practices of the Company and/or at or in connection with the Red Star Plants, other Lesaffre affiliated yeast production facilities (collectively, the "Company Operations"), together with information concerning the business, affairs, finances, products, research and technologies of the Company (Fermentis Business Unit of Lesaffre Yeast Corporation, Red Star Yeast Company, LLC and any other Lesaffre related or affiliated entities) including, without limitation, information regarding: product specifications; yeast strains, samples and/or cultures; data; know-how; formulas; compositions; processes; techniques; methods; designs; prints; sketches; photographs; samples; prototypes; inventions; concepts; ideas; past, current and planned research and development; past, current and planned manufacturing or distribution methods and processes; the identity of or other information about actual or potential customers, customer contacts and customer sales strategies; market studies, penetration data and other market information; sales and marketing plans, programs and strategies; sales, costs, pricing and other financial data; sources of supply for products, raw materials, and components; descriptions of plants and production equipment; price lists; business plans; financial reports and statements; computer software and programs (including object code and source code); databases; internal reports, memoranda, notes, analyses, compilations and studies; and other data, information, materials or

2



intangibles that relate to the Company's business, products and/or research of a technical, biological, scientific, commercial or industrial nature, (b) all notes, analyses, compilations, forecasts, studies, interpretations, and other documents prepared by Employee which contain, reflect or are based upon, in whole or in part, any information described in clause (a), (c) any information the Company has identified, either orally or in writing, as confidential and proprietary, and (d) any other materials disclosed by the Company to Employee or able to be accessed by him that have not been made available to the general public.

b. Employee acknowledges that by virtue of his employment with the Company, he was provided access to the Confidential Information detailed in Paragraph 5(a) of this Agreement. The Companies' Confidential Information, state-of-the-art production processes, technologies and operational information are extremely valuable to the Company and are not generally known in the yeast and/or fuel ethanol industries. Employee acknowledges that this information would be valuable to the Company's competitors and that disclosure of this information would irreparably harm the Company and would destroy its competitive advantage in the marketplace. Employee further acknowledges that his working with a competitor of the Company would inevitably result in the disclosure of the Company's proprietary information. Therefore, in consideration for the payments made to Employee under paragraph 2 of this Agreement, for a period of six (6) months following the termination of Employee's employment with the Company, Employee will not engage in any employment, consulting or similar engagement with any yeast company and/or yeast manufacturer having commercial operations, directly or indirectly, in the United States, Canada or Mexico, including, without limitation, either of Lallemand, Inc. (American Yeast), Angel Yeast, Fleischmann's, NABC (North American BioProducts), FermSolutions, Phibro Chem (Ethanol Performance Group), EdenIQ, Resonant Biosciences, Xylogenics, Martrex or any of their respective divisions, parents, partners, affiliates or subsidiaries. In addition, Employee acknowledges he may not work for any other biological ingredient supplier to the Fuel Ethanol Industry or any current customer of Fermentis.

c. In further consideration for the payments made to Employee under paragraph 2 of this Agreement and without limitation as to time so long as it is not otherwise commercially available in the marketplace, Employee shall not disclose any Confidential Information, directly or indirectly, nor use it in any way, without first obtaining the Company's written consent thereto, or except as such disclosure may be required by law. Employee expressly agrees that if he has any question regarding whether the Company considers any information to be confidential, he will consult with the Company before disclosing it to obtain the Company's permission. Employee further agrees that this restriction is reasonably necessary to protect the Company's legitimate interests because the disclosure or use of this information for a competitor will constitute irreparable damage to the Company.

3

    d. Employee represents that he has returned to the Company all tangible files, records, electronic files and/or data, documents, drawings, specifications, equipment and similar items relating to the business of the Company, whether prepared by Employee or otherwise coming into his possession and that he has not retained any such information in any form or on any media or provided any such information to any person or entity outside of the Company.

    e. Employee expressly acknowledges that the covenant contained in paragraph 5b is narrowly tailored to protect the Company's legitimate business interests and will not restrict his ability to obtain gainful employment. Employee represents that he possesses the skills, education and experience to obtain gainful employment outside of the yeast industry. Employee also acknowledges that he may work during the six (6) month period so long as it is not in violation of the restrictions in paragraph 5b.

    6. <u>Nondisparagement</u>. Employee agrees and promises that Employee will not defame, criticize or make any negative remark, written or oral, to any person or entity related to the Company, or regarding Employee's employment or the termination of employment with the Company. In the event that employment verification is necessary, Employee shall direct all such inquiries to Human Resources. As provided in Section 7 below, Company will only verify dates of employment and positions held.

    7. <u>Neutral Employment Reference</u>. The Company agrees that any inquiry regarding Employee from a prospective employer shall be responded to in a neutral fashion, disclosing only Employee's dates of employment and positions held.

    8. <u>Employee expressly agrees that if he breaches the provisions of paragraphs 3, 4, 5 or 6, that the Company shall be irreparably injured by Employee's actions</u>. Any such breach shall entitle the Company to obtain immediate declaratory and injunctive relief against the Employee. Employee further agrees that the Company would be released from any obligations to Employee provided in paragraph 2 of this Agreement and that Employee will repay the Company for all benefits he has received pursuant to paragraph 2 of this Agreement.

    9. <u>Complete Agreement</u>. Employee and the Company hereby agree and understand that this Agreement contains the complete and entire agreement between them concerning the terms, provisions and conditions of this Agreement. Employee and the Company further agree and understand that the terms, provisions and conditions of this Agreement may not be altered or modified except by a subsequent writing signed by Employee and a duly authorized agent of the Company.

    10. <u>Governing Law</u>. Wisconsin law shall govern this Agreement.

    11. <u>No Admission Of Liability</u>. Employee agrees and understands that the execution and delivery of this Agreement, or the exchange of the consideration specified herein, shall not be construed or act as an admission by the Company of any wrongful or improper conduct, fault, guilt or liability for any injury, damage, charge or claim, or that any actions the Company took

4

against Employee, or failures to act, were discriminatory, wrongful, retaliatory, tortious, unlawful or in violation of any federal, state or local laws, statutes, ordinances, regulations or constitutions, or were susceptible of inflicting any damage, harm or injury whatsoever.

12. <u>Voluntary Release</u>.   By signing this Agreement, Employee acknowledges that Employee:

    a. has been given twenty-one days after receipt of this Agreement within which to consider it;

    b. has carefully read and fully understand all of the provisions of this Agreement;

    c. knowingly and voluntarily agrees to all of the terms set forth in this Agreement;

    d. knowingly and voluntarily agrees to be legally bound by this Agreement;

    e. has been advised and encouraged in writing (via this Agreement) to consult with an attorney prior to signing this Agreement;

    f. understands that this Agreement, including without limitation the release provisions, shall not become effective and enforceable until the eighth day following execution of this Agreement by Employee, and that at any time prior to the effective day Employee can revoke this Agreement in writing provided to Laura Collins, Lesaffre Yeast Corporation, 7475 West Main Street, Milwaukee, WI 53214.

13. <u>Amendments</u>:  No amendments or variations of the terms of this Agreement shall be made without the express written consent of all Parties to this Agreement.

14. <u>Headings</u>:  The paragraph headings contained herein are for purposes of organization only and shall not constitute part of this Agreement.

IN WITNESS WHEREOF, Lesaffre Yeast Corporation (Fermentis Business Unit) has caused this Voluntary Separation, Release and Non-Compete Agreement to be executed by its duly authorized officer, and Piotr Krasucki has executed this Voluntary Separation, Release and Non-Compete Agreement, in each case as of the date first above written.

**Piotr Krasucki**                                            **Lesaffre Yeast Corporation**

*[signature]*                                                    *[signature: Laura M Collins]*

Dated: June 24, 2010                          Dated: 6/25/2010